# Perry *v.* The State.

## *Indictment for Murder.*

1. *Relevancy of evidence connected with prior assault.*—The defendant being on trial for the murder of his wife, the evidence against him being entirely circumstantial, and that adduced by him tending to show an *alibi*; the prosecution having proved that, about a week before the murder, he had made an assault on his wife, and threatened to kill her, and that he was arrested for that offense; evidence of the fact that, having pleaded guilty, "he was fined $10, and that his brother-in-law paid the fine and cost," is not relevant or admissible for the prosecution; though it is permissible to show, as was shown, that he went home with his brother-in-law, continued to live at his house until the next Sunday evening (the murder having been committed Sunday night), and then packed up his clothes and left without notice.

2. *Error without injury, in admission of irrelevant evidence.*—The admission of irrelevant evidence against objection, in a criminal case, is a reversible error, "unless the court can affirmatively see that it did not injure the defendant;" and the late decisions seem to go further, and to require a reversal unless it affirmatively appears that the defendant was benefitted by the ruling of which he complains.

3. *Charge as to "reasonable doubt."*—A charge asked in a criminal case, which requires an acquittal "if there is any doubt of the defendant's guilt which is not purely a speculative doubt," is properly refused.

FROM the Criminal Court of Jefferson.

Tried before the Hon. SAM. E. GREENE.

The defendant in this case, Henry Perry, was indicted for the murder of his wife, "by choking or strangling her, or by striking her with a stick, rock or stone, or with some blunt weapon or instrument to the grand jury unknown;" was convicted of murder in the first degree, and sentenced to death. The deceased was seen in her room, where a light was burning, about nine o'clock one Sunday night in September, 1889; and

[Perry v. The State.]

the next morning about daybreak she was found lying on the bed in her room, in an unconscious condition, caused by bruises and wounds on her head and throat. She lived several days afterwards, but never recovered consciousness. The physician who was called in testified, that the wounds must have been inflicted between midnight and daybreak. The back door of the room was found open, the inside bar having been removed; and a hole had been made near and through the hearth, through which an entrance might have been effected from below the house, which stood on pillows two or three feet above the ground. A young brother of the deceased, about sixteen years old, was found asleep on his bed in the back room, with a lamp burning near him. The evidence against the defendant was entirely circumstantial. The prosecution introduced testimony tending to show that, about a week before the murder, he committed an assault on his wife, having a pistol in his hand, and threatened to kill her; that she had him arrested the next day, and, after remaining in jail four or five days, he pleaded guilty in open court, and was fined ten dollars; that his brother-in-law, Peter Scott, paid the fine and costs, which amounted to $50 or $60, on defendant's undertaking to work for him until the amount was repaid; that defendant went home with Scott on the same day, carrying his clothes with him; that Scott lived about three or four miles from Avondale, where the defendant and his wife lived; that about sunset the next ensuing Sunday evening, just preceding the night of the murder, he went to the house, gathered up his clothes, and left, without saying anything to Scott or to any member of his family; that he was not seen again until 28th January, 1891, when he was arrested in Shelby county, where he was living under another name, and had married again. To a part of this evidence, which is copied in the opinion of the court, the defendant objected and excepted; and he testified in his own behalf that, on leaving Scott's house, he walked to Birmingham, arriving there about seven o'clock P. M., and there met an acquaintance, one Mason Daniels, who was coming to Montgomery on the railroad, and who proposed· to pay his fare; that they continued together until the train came by, between three and four o'clock in the morning, when they got on board, and he got off at Calera, and walked out to the place of the man for whom he was working at the time of his arrest; and he said that he had changed his name to keep his wife from following him. This testimony was corroborated by said Mason Daniels, as to the time he met defendant, their continuing together, and the journey on the railroad to Calera.

The defendant requested the court to instruct the jury, "that·

[Perry v. The State.]

if there is any doubt of the defendant's guilt, which is not purely a speculative doubt, they must acquit him;" and he excepted to the refusal of this charge.

S. L. WEAVER, for appellant.

· WM. L. MARTIN, Attorney-General, for the State.

COLEMAN, J.—The defendant was convicted of murder. The evidence offered by the State tended to show that the defendant was guilty as charged, and that offered by defendant tended to show an *alibi*. On the trial, the State proved an assault committed by defendant on the deceased, some four or five days prior to the time of the alleged homicide. The State then offered evidence, against the objection of the defendant, to show that, upon a trial for the assault, the defendant pleaded guilty, and "was fined ten dollars, and that defendant's brother-in-law, Peter Scott, paid the fine and cost." Separate objections were reserved to the rulings of the court admitting testimony to show that defendant was fined, and also to that part which showed that his brother-in-law secured the fine and costs.

We have been unable to discover the relevancy of the testimony objected to, for any purpose. It was competent to prove the whereabouts of defendant, from the time of the assault until he left Peter Scott's, and the circumstances of his leaving; and this was done by ·direct evidence, and was not denied by defendant. The fact that defendant was fined, and that Peter Scott paid the fine, in no way tended to establish the guilt of the defendant, or shed any light upon any legitimate issue before the jury. It was clearly irrelevant.

Probably, this evidence did not influence the verdict of the jury; but the rule in criminal cases is, that injury will be presumed from error, unless the court can affirmatively see that it did not injure him; and our decisions have gone far, as was said in *Maxwell v. The State*, 89 Ala, 164, to establish the doctrine, that there is no such thing as error without injury in a criminal cause, except where it affirmatively appears that the defendant was benefitted by the ruling of which he complains.— *Vaughan v. The State*, 83 Ala. 55; *Williams v. The State*, *Ib.* 16; *Marks v. The State*, 87 Ala. 99.

There was no error in refusing the charge requested by the defendant. In the case of *Perry v. The State*, it was said, "It is not any doubt, arising out of the evidence, which authorizes a jury to acquit on trial for crime, but only a reasonable doubt of such guilt, generated by the evidence in a cause—not

a possible, speculative, or imaginary doubt."—87 Ala. 33.   A charge which requires an acquittal, "if there. is *any doubt* of defendant's guilt which is not purely a speculative doubt," requires a higher degree of proof and conviction of the mind of the defendant's guilt than the law requires.   To be satisfied beyond a reasonable doubt, is all that is necessary to authorize a conviction, and a charge which requires more than this is erroneous, and should not be given.

Reversed and remanded.